# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **CARNELL D. MCELROY, SR.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:16CV00245 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **HAROLD CLARKE, ETC., ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Carnell D. McElroy, Sr., Pro Se Plaintiff; J. Michael Parsons, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants Harold Clarke, Earl Barksdale, Miss Baker, Jeffrey Artrip, and Lt. Roy Sykes.*

Carnell D. McElroy, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. Liberally construed, McElroy's Complaint alleges that prison officials placed a substantial burden on his free exercise of his religious dietary beliefs and denied him access to the grievance procedures. After review of the record, I conclude that McElroy is barred from pursuing his § 1983 claims because he failed to properly exhaust his administrative remedies before filing this action. As to one of his claims, I find that he fails to state a claim upon which relief can be granted.

I.

The following facts, taken from the record, are largely undisputed. McElroy, currently incarcerated at Red Onion State Prison ("Red Onion"), belongs to the Nation of Islam ("NOI") and is a member of the World Wide Muslim Community (known as "UMMA"). He states that his beliefs require him to eat "halal" foods and forbid him to eat "haram" foods, such as those prepared in a kitchen where pork products are also prepared. Compl. 2, ECF No. 1. McElroy was approved for Common Fare meals, a specialty diet provided to inmates whose religious dietary beliefs cannot be met from the regular menus available for Virginia Department of Corrections ("VDOC") inmates.

On March 4, 2015, a Red Onion correctional officer observed McElroy sharing food from his Common Fare tray with another inmate. This action violated the contract McElroy signed to be approved for Common Fare participation. Thereafter, McElroy was notified that the Institutional Classification Authority ("ICA") would soon conduct a hearing on whether or not to suspend him from Common Fare participation for six months, based on his contract violation.

McElroy filed an Inmate Request for Information/Services with defendant Earl Barksdale, the warden at Red Onion, dated March 10, 2015, stating:

> I had a ICA hearing for my Common Fare which will/may lead to my removal. However, the court just ruled that it is illegal for VADOC (Red Onion) to police religion. . . . My diet is a part of my religion. If I am removed illegally it will be a violation of my

freedom to practice my religion. And I will be forced to file a 1983. I do not want to do this, so I am making you aware of the situation in hopes that you will rectify the situation.

Compl. Ex. C, ECF No. 1-1. The warden's office responded on March 16, 2015, stating:

McElroy, you were observed sharing items from your Common Fare tray with another offender on March 4, 2015, which is a violation of the Common Fare Agreement you signed Feb. 2, 2014. In removing you from Common Fare we are not policing your religious rights. We are enforcing the agreement you signed stating your responsibilities as a Common Fare recipient and the consequences for not following the agreement.

*Id.* On March 17, 2015, McElroy was suspended from Common Fare participation for six months.

Once his six-month suspension had expired in September 2015, McElroy filed various administrative remedy forms complaining that he had not yet been reinstated to the Common Fare program. Officials advised him that he should see his counselor to reapply. McElroy then complained that VDOC food service policy does not require reapplication and mentioned other inmates who had been reinstated to Common Fare after a suspension, apparently without having to reapply. Warden Barksdale told McElroy that he would be required to reapply, however, and that unless he met the criteria for the Common Fare program, his application would be denied. During the period when McElroy was not approved

for Common Fare meals, he received meals from the regular VDOC menus that occasionally included haram items, such as pork and blood.

On March 31, 2016, McElroy filed an Offender Request asking again for reinstatement to Common Fare without reapplying for the program.[1] Counselor Stuart responded on April 19, stating: "You have 3 suspension[s] and will not be eligible [for reinstatement] til 3-4-19." Compl. Ex. S, ECF No. 1-1. McElroy filed an informal complaint disputing this ruling. Defendant Unit Manager Duncan responded on April 26, 2016: "I reviewed CORIS and discovered you had only violated Common Fare one time. Therefore, I have notified Counselor Stewart to re-do your Common Fare ICA." Compl. Ex. Z, ECF No. 1-1. McElroy filed this § 1983 Complaint in May 2016.

II.

The Prison Litigation Reform Act ("PLRA"), among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534

---

[1] In late March 2016, McElroy completed a Common Fare application, asking for reinstatement based on his "prior approval" for this religious diet. Compl. Ex. T, ECF No. 1-1. He does not provide any information about prison officials' response to this application.

U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, exhaust properly all available remedies under that procedure before bringing a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Operating Procedure 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a). Messer Aff., ECF No. 23-1. Under this procedure, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing an Informal Complaint form and submitting it to prison staff. *Id.* at ¶ 6. He will receive a written response to his Informal Complaint form within fifteen days, in order to allow him to initiate the formal grievance procedure by filing a Regular Grievance within thirty days of the occurrence about which it complains. *Id.* After investigation of the Regular Grievance, the warden or his designee will send the inmate a Level I response. If the responding official determines the grievance to be "unfounded," the inmate must appeal that holding to Level II, the regional administrator, and in some cases, to Level III.

If a Regular Grievance does not meet the filing requirements of OP 866.1, the grievance coordinator will reject the document at intake, mark the reason for the rejection on the back of the form, and return it to the inmate within two days. The inmate can appeal the intake rejection decision to the regional ombudsman. Proper exhaustion, however, requires the inmate to timely file a Regular Grievance and pursue it through the highest applicable level of appeal within the applicable time limits at each stage.

The defendants contend that they are entitled to summary judgment because McElroy failed to exhaust administrative remedies on his complaints about his initial suspension from the Common Fare program at Red Onion and the allegedly wrongful denials of his requests for reinstatement.[2] I agree. McElroy has submitted a Verified Statement Form indicating that he exhausted available administrative remedies. The undisputed exhibits in the record, however, demonstrate that he did not do so.

After the ICA approved McElroy's removal from Common Fare participation on March 17, 2015, McElroy had thirty days to file a Regular Grievance about this action. On April 15, 2015, he allegedly filed an Informal

---

[2] An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must take the non-movant's evidence as true and draw "all justifiable inferences" from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Complaint about being suspended from Common Fare, but never received a response. He did not file a Regular Grievance on this issue as before his thirty-day filing period expired on April 17, 2015.

The defendants bear the burden of proving the affirmative defense that McElroy failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007). They have done so as to this initial claim regarding the March 2015 suspension. McElroy may yet escape summary judgment under § 1997e(a) if he states facts showing that the remedies under the established grievance procedure were not "available" to him. *Ross*, 136 S. Ct. at 1859 (noting that circumstances making prison grievance procedures unavailable "will not often arise"). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

McElroy alleges vaguely that Informal Complaint forms are "not readily available" at Red Onion. McElroy Decl. ¶ 7, ECF No. 25-2. Regardless, he does claim that he submit a Regular Grievance by the April 17 deadline.

I thus find no material fact in dispute on which McElroy could persuade a reasonable fact finder that the established administrative remedies were unavailable to him. Because he failed to file a regular grievance within the

timeline dictated by OP 866.1, or to show that this process was unavailable, his claim concerning his March 17, 2015, suspension from the Common Fare program is unexhausted and must be dismissed as such. As the record also clearly reflects that he can no longer pursue administrative remedies on this issue, I will grant the defendants' motion as to this claim and dismiss it with prejudice.

McElroy next claims that after September 2015 when his suspension expired, the defendants violated his free exercise rights by refusing his requests for reinstatement to the Common Fare program without being required to reapply. Between September 2015 and April 2016, officials repeatedly told McElroy to reapply for Common Fare participation. He then delayed his own reinstatement by failing to complete an application as directed, based on his own interpretation of VDOC policy.[3]

McElroy also failed to file a properly formulated Regular Grievance or otherwise exhaust administrative remedies on this claim. On October 30, 2015, he filed a Regular Grievance complaining that he should have been automatically reinstated to the Common Fare program when his suspension expired. The institutional ombudsman, J. Messer, rejected this grievance as a request for services, instead of a grievance, and instructed McElroy to contact his counselor

---

[3] In any event, McElroy has no viable claim based on the defendants' alleged violations of Common Fare reinstatement procedures. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that violations of state procedural rules do not present a federal due process issue and, as such, are not actionable under § 1983).

about the reinstatement process. If McElroy had done so, and the reinstatement request had been denied, then McElroy could have filed an Informal Complaint about that denial decision to properly begin the exhaustion process. Instead of doing so, McElroy appealed Messer's intake decision that was upheld by the regional ombudsman. Because McElroy failed to follow instructions and then properly file a regular grievance about a particular occurrence, or to show that the regular grievance process was unavailable, his claim concerning the alleged 2015-2016 delay in reinstatement to the Common Fare program is unexhausted and must be dismissed. Finding no administrative remedy that McElroy could currently pursue to exhaust this claim, I will, therefore, grant the defendants' motion and dismiss this claim with prejudice.

McElroy's third claim asserts that while not approved for Common Fare meals, he occasionally received haram foods in violation of his beliefs. He submitted a Regular Grievance on December 10, 2015, about receiving pork for lunch on November 28. Rather than submitting this grievance to the institutional ombudsman as required by policy, however, McElroy mailed it to the regional ombudsman. That official received the grievance on December 15, and returned it, unprocessed, to McElroy for filing at Red Onion according to procedure. The Red Onion institutional ombudsman's office received the grievance on January 5, 2016, and rejected it as untimely because the thirty-day filing period had expired.

On March 1, 2016, McElroy filed a Regular Grievance complaining that he had been served pork at dinner on February 25 and that he had not been reinstated to Common Fare upon request. On March 9, 2016, Messer rejected the grievance at intake as a request for services. Messer instructed McElroy to submit his request for reinstatement to Common Fare to his counselor and to submit a request to food service for a no-pork diet.

The record thus indicates that McElroy did not follow the established grievance procedures to exhaust administrative remedies about his haram food complaints. He failed to submit the grievance about being served pork for lunch to the institutional ombudsman as policy dictated. He alleges that he did so because he feared Messer would reject the grievance as a request for services. This speculative fear neither demonstrates that the procedural steps of OP 866.1 were unavailable to him, *Ross*, 136 S. Ct. at 1858-60, nor excuses his failure to follow and complete those steps.

McElroy also failed to follow those steps to exhaust his complaint that he had been served pork for dinner. He could have followed Messer's instructions to file a request for services to ask for a pork-free diet, or to see his counselor about reinstatement to Common Fare. If such efforts did not achieve the desired results, he could then have filed an informal complaint and regular grievance, as required under OP 866.1. His self-selected alternative means of exhaustion do not comply

with Red Onion's established grievance procedures or with § 1997e(a). Accordingly, I will grant the defendants' Motion for Summary Judgment as to this claim, and dismiss it with prejudice, finding no evidence that McElroy could now exhaust.

In his fourth and final claim, McElroy contends that on April 19, 2016, he learned that he was being denied consideration for Common Fare reinstatement until March 2019 because of his counselor's mistaken determination that he had three prior suspensions. McElroy contends that this claim is exhausted, because his subsequent Informal Complaint on this issue was resolved in his favor. I agree. I conclude, however, that the claim must be summarily dismissed for failure to state a claim.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To survive dismissal under § 1915A(b)(1), an inmate's complaint must present "enough facts to state a claim to relief that is plausible on its face." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

McElroy's fourth claim must be dismissed as having no basis in fact. Section 1983 permits an aggrieved party to file a civil action against a person for

actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). McElroy fails to meet this pleading standard here because he states no facts showing how any of the defendants named in his Complaint was personally involved in the mistake about his eligibility for Common Fare.

Moreover, I also find that his contentions about the eligibility error do not state a religious rights claim, even if he had asserted it against a particular person. RLUIPA and the First Amendment prohibit governmental actors from imposing a "substantial burden" on an inmate's ability to exercise his religion unless the government can demonstrate an appropriate reason for the burden. *Lovelace v. Lee*, 472 F.3d 174, 198 n. 8 (4th Cir. 2006). For either type of claim, "a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 187 (RLUIPA context) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981) (First Amendment context). "[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause," *id.* at 201, or RLUIPA. *Id.* at 194 (holding that

"simple negligence . . . does not suffice to meet the fault requirement" in RLUIPA).

At the most, McElroy alleges that counselor Stuart's mistake about his prior suspensions delayed consideration of his reinstatement for a week. As stated, on April 26, the unit manager corrected that mistake and directed a new ICA review of McElroy's Common Fare status. McElroy makes no allegation that Stuart or any other prison official purposely miscalculated the number of prior suspensions. A prison official's negligent review of McElroy's suspension record that interfered temporarily with his religious dietary practice is not sufficient to support a claim under either the First Amendment or RLUIPA. Most importantly, the brief delay Stuart's error caused to the consideration of McElroy's reinstatement to the Common Fare program cannot qualify as a substantial burden under the First Amendment or RLUIPA. Accordingly, I will dismiss this portion of McElroy's Complaint under § 1915A(b)(1) for failure to state a proper claim.

III.

For the stated reasons, I cannot find that McElroy properly exhausted his available administrative remedies as to his first three claims before filing this action. Accordingly, I will grant the defendants' Motion for Summary Judgment under § 1997e(a) as to these three claims. Because I find it clear from the record that McElroy no longer has an available administrative remedy regarding these

claims, I will dismiss them with prejudice. Furthermore, I will summarily dismiss under § 1915A(b)(1), his fourth claim concerning the mistaken April 2016 finding that he was ineligible for reinstatement to the Common Fare until 2019.

A separate Order will be entered herewith.

DATED: June 14, 2017

/s/ James P. Jones
United States District Judge